**United States District Court**
**Central District of California**



FILED
CLERK, U.S. DISTRICT COURT

AUG 25, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

Tamara Claiborne and Noel Havier-Habib, et al.

                              Plaintiffs,

                    v.


Water of Life Community Church,

                              Defendant.

EDCV 17-00771-VAP (KKx)

**Order (1) Granting in Part and Denying in Part Motion to Dismiss Individual Claims and (2) Denying Motion to Strike Class Action Allegations**

        Before the Court is Defendant Water of Life Community Church's "Motion to Dismiss Individual Claims" ("Motion to Dismiss") and "Motion to Strike Plaintiffs' Class Action Allegations" ("Motion to Strike"), filed on July 6, 2017. The Court finds the Motion to Dismiss and the Motion to Strike appropriate for resolution without oral argument and hereby VACATES the hearing set on August 28, 2017 at 2:00 p.m.  See Fed. R. Civ. P. 78(b); L.R. 7-15.  After considering all papers filed in support of, and in opposition to the Motions, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss and DENIES the Motion to Strike.


I.      **BACKGROUND**

        A.      **Allegations in the First Amended Complaint**

        Defendant Water of Life Community Church ("Defendant" or "the Church") is a non-denominational evangelical church founded in 1990 and located in Fontana, California.  (First Amended Complaint ("FAC") at ¶ 5.)  Paul Ricky Mata ("Mata") was a Church Elder and a member of the Church approximately since its founding.  (Id. at ¶¶ 2, 23, 79.)  Mata was paid by Defendant "to instruct members on how to invest their money."  (Id. at ¶ 2.)  Church members were required to participate in Mata's financial education seminars.  (Id.)  To participate in missionary work, advance in Church hierarchy, and become officially listed in the

membership directory, Church members were required to attend Mata's investment and financial planning courses.  (Id. at ¶¶ 25-27.)  Defendant held Mata out as a "reputable and reliable financial professional" and one of the Church's "experienced Christian advisors."  (Id. at ¶¶ 28, 38, 53.)  Defendant had "every ability to directly or indirectly control the substance of the seminars, and prohibit the actual or implied 'sales pitch' that Mata was giving the members as opposed to unbiased, legitimate education on investing."  (Id. at ¶ 39.)  Mata shared the proceeds of his seminars with Defendant.  (Id. at ¶ 77.)

Mata has not been registered to sell securities since April 2009.  (Id. at ¶ 30.)  Mata was fined and penalized by various governmental and financial industry regulatory agencies for violating various laws and financial advising standards for several years.  (Id. at ¶¶ 30-36.)  "In 2012, Mata's Series 7, 9, 10, 24, and 63 securities licenses all expired."  (Id. at ¶ 36.)  Defendant knew or reasonably should have known about these sanctions against Mata.  (Id. at ¶ 44-50.)  Despite this, Mata continued to serve as an unregistered financial advisor for his clients and Church members.  (Id. at ¶ 37.)

Plaintiffs Tamara Claiborne and Noel Haver-Habib ("Plaintiffs") are former members of the Church.  (Id. at ¶ 4.)  Plaintiffs invested money with Mata after attending an investment seminar with him.  (Id. at ¶¶ 14, 56.)  Plaintiffs believed the investments Mata recommended "were approved by or otherwise consistent with the Church's teachings."  (Id. at ¶ 39.)

Some Church members raised concerns about Mata's seminars, which included solicitations.  (Id. at ¶ 42.)  Defendant dismissed these concerns and "rejected proposals for other more legitimate personal finance curriculum . . . ."  (Id. at ¶ 43.)

As a result of Defendant holding Mata out as a reputable financial consultant, Plaintiffs invested $1,240,000.00 in unregistered securities sold by Mata.  (Id. at ¶¶ 53, 55.)  Mata misappropriated these investments by using the funds for his own personal use or diverting them to other entities, with which Mata was affiliated.  (Id. at ¶¶ 54, 59.)  Plaintiffs lost all of their investments with Mata.

(<u>Id.</u> at ¶ 65.)  Had Defendant disclosed to Plaintiffs that Mata was "not a licensed financial advisor, and was censured by FINRA and [the State of] Nevada, they never would have allowed Mata to make any investment recommendations to them, or would not have purchased any investments from him."  (<u>Id.</u> at ¶ 55.)  Mata's fraudulent scheme came to an end when the Securities and Exchange Commission pursued claims against Mata before this Court.  (<u>Id.</u> at ¶ 60.)

After Mata's fraudulent conduct came to light, Plaintiffs sought financial assistance from Defendant.  (<u>Id.</u> at ¶ 61.)  Despite being "one of the wealthiest and fastest growing businesses in the region . . . [that] certainly had the means to create a restitution fund for its victims," Defendant refused to provide Plaintiffs any financial assistance.  (<u>Id.</u> at ¶¶ 62-64.)

### B.     Procedural History

On April 21, 2017, Plaintiffs, on behalf of proposed class members, filed a Complaint against Defendant.  Thereafter, on May 9, 2017, Plaintiffs filed a First Amended Complaint ("FAC") against Defendant with the following five claims: (1) "Negligence-Respondeat Superior"; (2) "Negligence-Direct"; (3) violation of the California Consumer Legal Remedies Act; (4) violation of the California Unfair Business Practices Act; and (5) violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b).  (<u>See</u> FAC.)

Defendant filed the instant Motion to Dismiss and Motion to Strike on July 6, 2017.  Plaintiffs filed untimely Opposition to both Motions on July 21, 2017. Pursuant to Local Rule 7-9, any opposition to the Motions was due to be filed on July 17, 2017.  The parties, however, filed a joint stipulation to continue the hearing date on the Motions from August 7, 2017 to August 28, 2017 and allow Defendant to file a Reply to Plaintiffs' Oppositions by August 14, 2017, which the Court approved on July 26, 2017.[1]  Defendant then filed a timely Reply to each of Plaintiffs' Oppositions on August 14, 2017.

---

[1] The Court construes the Oppositions as timely filed in light of the parties' joint stipulation.

## II.     MOTION TO DISMISS

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  Schwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

### B.   Discussion
#### 1.   Ecclesiastical Abstention

Defendant moves the Court to dismiss the FAC because its allegations "offend the First Amendment and require the[e] Court to dismiss this action for lack of subject matter jurisdiction." (Mot. to Dismiss at 1.) Defendant contends Mata's "financial advice and his position as [Defendant's] chosen financial advisor are extensively entangled with Church doctrine." (Id. at 6.) In fact, "[t]he instruction offered by Mata was central to [Defendant's] doctrine, and participation in his classes was *required* to become a minister for the Church, perform missionary work, or even be listed in the Church's membership directory." (Id. at 6-7 (emphasis in original).) Defendant argues ecclesiastical abstention prohibits the Court from inquiring into its religious doctrine and evaluating Plaintiffs' claims alleged in the FAC. (Id.)

In Opposition, Plaintiffs contend the resolution of their claims does not require the Court to evaluate religious doctrine. According to Plaintiffs, "[t]here is no need to delve into Christian Doctrine to conclude it is negligent for any institution – whether religious or secular – to retain a known financial predator cloaked as an experienced financial advisor to teach financial seminars and encourage investment in his Ponzi scheme." (Opp'n to Mot. to Dismiss at 5-6.) Plaintiff also argues "[t]he sales pitch may have been cloaked in religion but the

tortious acts had nothing to do with God and everything to do with fleecing the flock whether Baptist, Catholic, or Hindu."  (Id. at 6.)

The Ninth Circuit recently addressed ecclesiastical abstention in Puri v. Khalsa, 844 F.3d 1152 (9th Cir. 2017) and explained the doctrine limits "the role of civil courts in the resolution of religious controversies that incidentally affect civil rights."  Puri, 844 F.3d at 1162 (quoting Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich, 426 U.S. 696, 710 (1976)) (internal quotation marks omitted).  The Ninth Circuit discussed two approaches to deciding "church disputes" without violating the First Amendment: (1) "simply to 'accept[] the decision of the established decision-making body of the religious organization'"; or (2) the "neutral principles of law" approach which allows civil courts to resolve "church disputes" "by application of solely secular legal rules."  Puri, 844 F.3d at 1162-63 (quoting Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar, 179 F.3d 1244, 1248 (9th Cir. 1999)).  "[T]he ecclesiastical abstention doctrine . . . require[s] [] that courts decide disputes involving religious organizations 'without resolving underlying controversies over religious doctrine.'"  Puri, 844 F.3d at 1164 (quoting Kianfar, 179 F.3d at 1248).

The Ninth Circuit went on to explain certain conflicts, such as property disputes involving religious institutions, were "especially amenable to application of the neutral-principles approach" and that there was no reason to preclude "courts from deciding other types of church disputes by application of purely secular legal rules, so long as the dispute . . . can be decided 'without resolving underlying controversies over religious doctrine.'"  Puri, 844 F.3d at 1165 (quoting Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 449 (1969)).

Here, as stated supra, Plaintiffs bring claims for negligence and for violations of the California Consumer Legal Remedies Act, the California Unfair Competition Law, and Section 10(b) of the Securities Exchange Act.  (See FAC.)  Plaintiffs do not seek "resolution of a controversy over religious doctrine."  Puri, 844 F.3d at 1167.  Instead, Plaintiffs intend to prosecute neutral civil claims, the resolution of which will not require the Court to resolve any religious controversies.  To the

extent there is any possibility the Court may have to consider religious documents, for example, to resolve any of these disputes, the Court will "take special care to scrutinize the document[s] in purely secular terms, and not rely on religious precepts." Puri, 844 F.3d at 1165 (quoting Jones v. Wolf, 443 U.S. 595, 604 (1979)) (internal quotation marks omitted).

Accordingly, based on the nature of Plaintiffs' claims, "the availability of the neutral-principles approach obviates the need for ecclesiastical abstention." Puri, 844 F.3d at 1168; see also Richardson v. Nw. Christian Univ., No. 6:15-cv-01886-AA, 2017 WL 1042465, at *7 (D. Or. Mar. 16, 2017) (concluding ecclesiastical abstention did not apply because there was no need to resolve questions of religious doctrine and "the claims [could] be resolved by applying ordinary principles of employment law.").

### 2. Negligence

Defendant moves the Court to dismiss Plaintiffs' two negligence claims on several grounds. First, with respect to Plaintiffs' respondeat superior negligence claim, Defendant contends Plaintiffs "have not alleged sufficient facts to make a prima facie showing" "that Mata was an agent of [Defendant] and that Mata was acting within the scope of his agency when he defrauded [P]laintiffs." (Mot. to Dismiss at 8.) In addition, Defendant claims Mata's intentional fraud makes it "logically impossible for [Defendant] to be vicariously liable for Mata's negligence." (Id. at 10.) Finally, Defendant argues Plaintiffs failed to allege any of the three recognized forms of vicarious liability. (Id. at 10-11.). With respect to Plaintiffs' direct negligence claim, Defendant argues Plaintiffs cannot state such a claim because it owed Plaintiffs no duty of care. (Id. at 11.)

In Opposition, Plaintiffs argue they sufficiently pled both negligence claims. (See Opp'n to Mot. to Dismiss at 13-19.) Plaintiffs contend the allegations in the FAC state a claim for negligence based on Mata's agency relationship with Defendant, as Mata was an employee and agent of Defendant acting within the scope of his employment and agency when he engaged in fraud and Defendant was negligent in its hiring and retention of Mata, a "known financial predator." (Id. at 13.)

The Court first considers Plaintiffs' negligence claim on the basis of vicarious liability.  Plaintiffs base this claim on Mata's alleged agency relationship with Defendant, as Defendant's employee.  Evaluation of the claim requires the Court to consider both whether Plaintiffs have pled sufficient facts to demonstrate an agency relationship between Mata and Defendant and whether the FAC states a claim for respondeat superior liability.  The Court discusses each in turn.

Under California law, an agent is defined as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295.  "In determining if an agency relationship exists, the court considers three essential characteristics: (1) an agent or apparent agent holds a power to alter the legal relationships between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal had the right to control the conduct of the agent with respect to matters entrusted to him." Grober v. Mako Prod., Inc., No. CV 04-08604 SGL (OPx), 2008 WL 9027249, *6 (C.D. Cal. Aug. 29, 2008) (citing Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp., 148 Cal. App. 4th 937, 945 (2007)); see Gerritsen v. Warner Bros. Entm't, Inc., 116 F. Supp. 3d 1104, 1146 (C.D. Cal. 2015).

Plaintiffs argue they have pled adequately an agency relationship based on the following: Defendant "had the right to control the content of Mata's seminars" (FAC at ¶ 72); "Mata was paid by [Defendant] to conduct financial seminars" (FAC at ¶ 76); "Mata shared the proceeds of the seminars with [Defendant]" (FAC at ¶ 77); Mata was a "member of [Defendant's] Elders Board" (FAC at ¶ 79); and Defendant required participation in Mata's seminars (FAC at ¶ 81).

Even drawing all reasonable inferences in Plaintiffs' favor, the FAC fails to plead the first two necessary characteristics of an agency relationship, i.e., that Mata held "power to alter the legal relationships between [Defendant] and third persons and between [Defendant] and Mata" and that Mata was "a fiduciary with respect to matters within the scope of the agency."  Grober, 2008 WL 9027249 at *6. Accordingly, the FAC does not allege sufficient facts to show the existence of an

agency relationship between Mata and Defendant to support the negligence claim premised on vicarious liability.

The Court next evaluates whether the FAC states a claim for respondeat superior liability.  Under California law, employers are liable for acts of their employees occurring within the scope of their employment.  See Farmers Ins. Grp. v. Cty. of Santa Clara, 11 Cal. 4th 992, 1003 (1995); see also Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 775-76 (9th Cir. 2002) (citing Rest. 2d Agency § 219).  The California Supreme Court has held an employee is acting within the scope of his employment:

> when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.  In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer.

Farmers Ins. Grp., 11 Cal. 4th at 992 (italics deleted) (internal quotation marks omitted); see also Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal. 4th 291 (1995) (noting that the test is not one of "but for" causation, but rather depends upon whether the risk of the tortious act was "inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken.").  "Within the course and scope of employment means: (1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform."  Oki Semiconductor Co., 298 F.3d at 775-76.

"This test has been interpreted broadly to include within the scope of employment an employee's acts of personal convenience during working hours, as well as acts of the employee that combine personal business with the business of the employer."  Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d 1158, 1163 (9th Cir. 2005).  "But the scope of employment inquiry is not boundless."  Id.

"[A]n employer will not be held liable for an employee's conduct "if the employee substantially deviates from the employment duties for personal purposes." Id. (quoting Farmers Ins. Grp., 11 Cal. 4th at 449 (italics deleted)).

In some cases, courts have imputed respondeat superior liability on employers for the intentional torts of their employees. See, e.g., Ruppe v. City of Los Angeles, 186 Cal. 400, 402 (1921) (extending doctrine of respondeat superior liability to malicious acts and other intentional torts an employee committed within the scope of employment); Lisa M., 12 Cal. 4th at 296-97 (criminal torts may fall within the scope of employment even though employer did not authorize employee to commit crimes or intentional torts); Bureerong v. Uvawas, 959 F. Supp. 1231, 1236 (C.D. Cal. 1997) (finding plaintiffs stated a claim for vicarious liability against employer for employee's intentional torts); see also Noble v. Sears, Roebuck & Co., 33 Cal. App. 3d 654, 663 (1973) (extending respondeat superior liability to hold principals liable for intentional torts of agents committed within the scope of their agency). In other cases, courts have declined to do so. See, e.g., Ins. Co. of N.A. v. Fed. Exp. Corp., 189 F.3d 914, 922 (9th Cir. 1999) (finding no respondeat superior liability for an employee's theft because "it was a substantial deviation from employee's duties"); see also Lisa M., 12 Cal. 4th at 297-98 ("the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work.").

Plaintiffs contend "Mata was employed to provide financial and investment advice to Church members and engaged in his negligent or fraudulent financial advising in the course of his employment. [Defendant] held Mata out as a legitimate, competent financial advisor who would facilitate investment in funds consistent with the Church's teachings." (Opp'n to Mot. to Dismiss at 14 (citing FAC at ¶¶ 28, 39, 40-42.) Based on these allegations, it appears Plaintiffs may have alleged sufficient facts to show Mata was acting within the scope of his employment when he misappropriated millions of dollars from Plaintiffs.

Plaintiffs do not, however, state a claim that Defendant was negligent under the theory of respondeat superior liability. Plaintiffs allege throughout the FAC Mata intentionally defrauded them. (See, e.g., FAC at ¶¶ 2, 54, 59, 50.) The Court

agrees with Defendant that it is logically incongruent to impute Mata's intentional torts on Defendant through a negligence claim.  (See Mot. to Dismiss at 10; Reply at 3 ("even if Mata were [Defendant's] agent, [Defendant] cannot be liable for negligence since Mata did not act negligently when he stole money from [P]laintiffs.").)  Plaintiffs fail to cite any cases in support of their argument they can state a claim for negligence against Defendant by imputing Mata's intentional torts on Defendant through respondeat superior liability, nor is the Court aware of any such authority.  Accordingly, Plaintiffs' negligence claim on the basis of respondeat superior liability is DISMISSED.

Turning to Plaintiffs' direct negligence claim, the Court concludes Plaintiffs' claim is well-pled.

To prevail on their negligence claim against Defendant, Plaintiffs must show Defendant had a legal duty to use reasonable care, Defendant breached that duty, and the breach was the proximate cause of Plaintiffs' injuries.  See Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (1998).  A legal duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship."  Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984-85 (1993).

Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee.  See Delfino v. Agilent Techs., Inc., 145 Cal. App. 4th 790, 815 (2006).  "Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm then materializes."  Doe v. Uber Tech., Inc., 184 F. Supp. 3d 774, 788 (N.D. Cal. 2016). California follows the rule set forth in the Restatement (Second) of Agency § 213, which provides in pertinent part: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others."  Rest. 2d Agency § 213. Liability may be imposed "either on the basis of . . . action – for example, the negligent hiring of an agent – or . . . inaction – for example, the failure to

provide adequate supervision of the agent's work." <u>Far West Fin. Corp. v. D & S</u> <u>Co.</u>, 46 Cal. 3d 796, 812 (1988).

According to the allegations in the FAC, Defendant "assumed a duty of care by representing that Mata was qualified to teach the financial planning courses it offered and controlled the content of the seminars" (Opp'n to Mot. to Dismiss at 13 (citing FAC at ¶¶ 28, 39)); Defendant "employed a formal process of background checks" for its employees and "knew or should have known Mata was a dangerous financial predator" (<u>id.</u> (citing FAC at ¶¶ 44-51)); Defendant breached its duty of care "by employing or otherwise engaging a known financial predator and advocating that its members trust him with their money (<u>id.</u> (citing FAC at ¶¶ 53-54)); and this breach caused Plaintiffs significant damages, including the loss of over one million dollars (<u>id.</u>).

Construing the allegations in the FAC in the light most favorable to Plaintiffs, the FAC alleges sufficient facts to demonstrate each element of a negligence claim. <u>See</u>, <u>e.g.</u>, <u>Doe</u>, 184 F. Supp. 3d at 788. In particular, Plaintiffs allege Defendant assumed a duty of care through its actions, <u>i.e.</u>, by hiring and holding Mata out as a qualified financial advisor and requiring its Church members to attend Mata's seminars. <u>See</u> <u>Potter</u>, 6 Cal. 4th at 984-85 (duty of care may be assumed by a defendant). Further, Plaintiffs set forth detailed allegations that Defendant knew or should have known of Mata's lengthy history of sanctions and restrictions imposed on him by governmental and financial regulatory agencies. (<u>See</u> FAC at ¶¶ 44-49.) In other words, Plaintiffs allege in the alternative Defendant had "reason to believe [Mata] [wa]s unfit" or Defendant "fail[ed] to use reasonable care to discover [Mata's] unfitness before hiring him." <u>Juarez v. Boy Scouts of</u> <u>Am., Inc.</u>, 81 Cal. App. 4th 377, 395 (2000). Accordingly, the FAC states a claim for direct negligence against Defendant for its hiring and retention of Mata.

### 3.      California Consumer Legal Remedies Act

Defendant moves to dismiss Plaintiffs' claim brought pursuant to the California Consumer Legal Remedies Act ("CLRA"). (<u>See</u> Mot. to Dismiss at 18-20.) Defendant contends the FAC fails to allege it provided any "service" covered under the CLRA. (<u>Id.</u> at 19.) According to Defendant, Plaintiffs base this claim on

Defendant's purported failure to disclose that Mata was unfit to serve as a financial advisor, which Defendant argues is not a "service" covered by the CLRA.  (Id.)  In addition, Defendant argues "an offer of financial advice *related to* investments is not a service" covered by the CLRA.  (Id. (emphasis in original).)

In Opposition, Plaintiffs argue the FAC sufficiently pleads a CLRA claim by alleging "Mata was providing a service on behalf of [Defendant] by teaching financial management seminars and managing members' money.  Providing financial education to Plaintiffs is a service."  (Opp'n to Mot. to Dismiss at 19-20 (citing FAC ¶¶ 26, 28, 29, 40).)

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  It defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property."  Cal. Civ. Code § 1761(a).  It defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).

In support of its argument that the FAC fails to allege it provided a "service" pursuant to the CLRA, Defendant cites to Fairbanks v. Superior Court, 46 Cal. 4th 56, 65 (2009) and Sanchez v. Aviva Life & Annuity Co., No. CV S-09-1454 FCD/DAD, 2010 WL 2606670 (E.D. Cal. June 28, 2010).

In Fairbanks, the California Supreme Court held a life insurance policy is not a "good" or "service" covered by the CLRA.  Fairbank, 46 Cal. 4th at 65.  The court evaluated the text of the CLRA, including its unambiguous definition of the terms "good" and "service," and concluded a life insurance policy does not fall under either definition.  Id.  Life insurance "is not a 'tangible chattel'" so it could not be considered a "good" under the CLRA.  Id. at 61.  Moreover, life insurance is not a

"service" because "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel." Id. The court also considered whether allegations regarding "the work or labor of insurance agents and other insurance company employees in helping consumers select policies that meet their needs, in assisting policyholders to keep their policies in force, and in processing claims" were sufficient to allege a "service" under the CLRA. The court concluded they did not:

> [A]ncillary services are provided by the sellers of virtually all intangible goods – investment securities, bank deposit accounts and loans, and so forth. The sellers of virtually all these intangible items assist prospective customers in selecting products that suit their needs, and they often provide additional customer services related to the maintenance, value, use, redemption, resale, or repayment of the intangible item. Using the existence of these ancillary services to bring these intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.' We conclude, accordingly, that the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the [CLRA].

Id. at 65 (internal citations omitted).

In Sanchez, the plaintiff alleged the defendant provided a "service" covered by the CLRA by providing him an "overall investment plan and corresponding financial services." Sanchez, 2010 WL 2606670 at *6. In deciding the defendant's motion to dismiss, the court evaluated the plaintiff's allegations and concluded, absent any authority "that directly supports a conclusion that *investment services* fall within the purview of the CLRA," the plaintiff did not state a CLRA claim. Id. (emphasis in original). The court went on to state even if the plaintiff's CLRA claim was premised on the defendant's provision of life insurance policies to plaintiff, "insurance policies are not within the ambit of the CLRA" because "the California Supreme Court [has] held that insurance policies are neither 'goods' nor 'services' as defined by the CLRA." Id. (citing Fairbanks, 46 Cal. 4th 56).

In Opposition, Plaintiffs rely primarily on two cases in support of their position that Mata's provision of financial education constitutes a "service" under the CLRA: Kagan v. Gibraltar Sav. & Loan Assn., 35 Cal. 3d 582, 596-97 (1984) and Estate of Migliaccio v. Midland Nat'l Life Ins. Co., 436 F. Supp. 2d 1095, 1109 (C.D. Cal. 2006).  (See Opp'n to Mot. to Dismiss at 21-22.)  In Kagan, the court concluded the CLRA applied to management fees charged in connection with retirement accounts.  Kagan, 35 Cal. 3d at 596-97, disapproved of on other grounds by Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634 (2009).  In Estate of Migliaccio, the court denied a motion to dismiss a CLRA claim based on the provision of estate and financial planning services.  Estate of Migliaccio, 436 F. Supp. 2d at 1109.  Although both decisions appear to support Plaintiffs' position, they pre-date the California Supreme Court's decision in Fairbanks, discussed supra.  As such, the analysis and conclusions in both cases rely on pre-Fairbanks authorities.  For this reason, the Court does not find either case persuasive.  See, e.g., Biggs v. Bank of Am. Corp., No. EDCV 15-00267 VAP, 2015 WL 3465739, at *6 (C.D. Cal. June 1, 2015) (finding case relied upon by the plaintiff unpersuasive because, although the decision cited to Fairbanks, it relied on cases that predated the Fairbanks decision).

Although the Court does not find Plaintiffs' cited cases persuasive, after Fairbanks was decided, at least two courts in this Circuit have found allegations regarding education, similar to what Plaintiffs allege here, adequately plead a "service" under the CLRA.  See, e.g., Anderson v. SeaWorld Parks and Entm't, Inc., No. 15-cv-02172-JSW, 2016 WL 8929295, at *12 (N.D. Cal. Nov. 7, 2016); Russ v. Apollo Grp., Inc., No. CV 09-904-VBF, 2009 WL 10674112, at *2 (C.D. Cal. Sept. 23, 2009).

In both Anderson and Russ, the district courts acknowledged the holding in Fairbanks but pointed out the California Supreme Court therein failed to address whether the term "services furnished in connection with the sale or repair of goods" limited the preceding phrase "services for other than a commercial or business use" in the CLRA.  Anderson, 2016 WL 8929295 at *11; Russ, 2009 WL 10674112 at *2.  In evaluating the CLRA's legislative history, both district courts found "education" was listed as a service under section (b) of the Model National

15

Consumer Act, upon which the CLRA was based.  <u>Anderson</u>, 2016 WL 8929295 at
*11; <u>Russ</u>, 2009 WL 10674112 at *3.  The defendants in both cases argued the
district courts should find, as in <u>Fairbanks</u>, the legislature was aware of this specific
provision from the model act yet omitted it from the CLRA, such that the statute
should not be construed as including the omitted provision.  <u>Id.</u>  Both district courts
declined to so interpret the CLRA.  <u>Id.</u>

   In particular, the <u>Anderson</u> court applied the principle of statutory
construction that "the specific language is replaced by general language that
includes the specific instance," in construing the legislature's decision to omit
section (b) of the model act from the CLRA.  <u>Anderson</u>, 2016 WL 8929295 at *11.
The legislature substituted section (b) for the phrase "services for other than a
commercial or business use, including services furnished in connection with the sale
or repair of goods."  <u>Id.</u>  The <u>Anderson</u> court found the latter phrase "comprises
general language that could encompass the specific instances described in
subsection (b) of the model act," including education.  <u>Id.</u>  The <u>Russ</u> court reached
the same conclusion.  <u>Russ</u>, 2009 WL 10674112 at *3.

   By contrast, section (c) of the model act listed only "insurance."  The
<u>Fairbanks</u> court found the legislature's failure to include "insurance" in the
definition of "service" in the CLRA determinative because it "demonstrated an
'intent *not* to treat all insurance as a service under' the CLRA."  <u>Anderson</u>, 2016
WL 8929295 at *11 (quoting <u>Fairbanks</u>, 46 Cal. 4th at 61).  In addition, Fairbanks
looked to the Unruh Act, which also defined the term "services."  <u>Id.</u> at *12 (citing
<u>Fairbanks</u>, 46 Cal. 4th at 62).  The Unruh Act defined "services" as "work, labor
and services, for other than a commercial or business use, including services
furnished in connection with the sale of repair of good as defined in Section 1802.1
. . . or the providing of insurance."  <u>Id.</u> (quoting Cal. Civ. Code § 1802.2).
<u>Fairbanks</u> applied the principle "[t]he use of differing language in otherwise parallel
provisions supports an inference that a difference in meaning was intended" to
reach the conclusion the failure to include the "insurance" in the definition of
"service" in the CLRA was intentional.  <u>Id.</u> (quoting <u>Fairbanks</u>, 46 Cal. 4th at 62).
The <u>Anderson</u> court found "there was no language in the pertinent portions of the

CLRA and the Unruh Act that might lead to a conclusion that the legislature did not intend the CLRA to cover . . . 'education' as [a] "service[]."  Id.

The Court finds the reasoning in Anderson and Russ persuasive and adopts it.  As the CRLA must be construed liberally, Cal Civ. Code § 1760, the Court is not persuaded Plaintiffs' CLRA claim, based on allegations Mata provided financial education to Plaintiffs and ultimately defrauded them, is barred in light of Anderson and Russ and notwithstanding Fairbanks.  Moreover, Defendant has not provided binding or persuasive authority to show CLRA claims based on other categories listed in section (b) of the Model National Consumer Act are barred as a matter of law.  See, e.g., Russ, 2009 WL 10674112 at *3.

Although Plaintiffs have pled sufficiently Defendant provided it a service of financial education that is covered by the CLRA, Plaintiffs fail to plead the remaining elements of a CLRA claim, namely that Mata's financial education seminars were sold or intended to be sold to Plaintiffs.  See Cal. Civ. Code § 1770(a).  Instead, Plaintiffs allege Mata was paid by Defendant to provide the seminars to Church members and the FAC contains no allegations to show Plaintiffs purchased entry into the seminars.  (See FAC at ¶¶ 66, 76.)  Hence, the allegations, as currently pled, fail to state a CLRA claim.  Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' CLRA claim.

### 4.    California Unfair Competition Law

Defendant moves the Court to dismiss Plaintiffs' claim brought pursuant to California's Unfair Competition Law ("UCL").  (See Mot. to Dismiss at 20-22.)  In particular, Defendant contends the FAC fails to allege sufficient facts to show Defendant was unjustly enriched or that Plaintiffs are entitled to restitution.  (Id.)  In its Reply, Defendant also argues injunctive relief is unavailable to Plaintiffs because Mata's fraudulent scheme ended several years ago.  (See Reply at 7.)

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200, et seq.  "A plaintiff may allege either an unlawful, an unfair, or a fraudulent act to establish liability under the UCL."  Marques v. Wells Fargo Bank, N.A., No. 16-cv-03973-YGR, 2016 WL 5942329, at

*8 (N.D. Cal. Oct. 13, 2016) (citing <u>Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999)).  "As to the unlawful prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law." <u>Johnson v. Select Portfolio Servicing, Inc.</u>, No. 15-cv-9231-JFW, 2016 WL 837895, at *4 (C.D. Cal. Mar. 3, 2016) (citation omitted).  "A business practice is 'unfair' when that practice 'either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" <u>Id.</u> (citing <u>McDonald v. Coldwell Banker</u>, 543 F.3d 498, 506 (9th Cir. 2008)).  "A business practice is "fraudulent" if members of the public are likely to be deceived." <u>Id.</u> (citing <u>Prata v. Superior Court</u>, 91 Cal. App. 4th 1128, 1146 (2001)).  "If the claim is grounded in fraud, the pleading of that claim must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." <u>Id.</u>

"In a private unfair competition law action, the remedies are 'generally limited to injunctive relief and restitution.'" <u>Clark v. Superior Court</u>, 50 Cal. 4th 605, 610 (2010).  "[A]n individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1148 (2003).

In Opposition, Plaintiffs argue their damages allegations supporting the UCL claim are well-pled and they "should be allowed to take discovery to determine the exact amount of the alleged kickbacks and what if any injunctive relief may be necessary."  (Opp'n to Mot. to Dismiss at 23.)

In the FAC, Plaintiffs allege unjust enrichment as follows: Defendant paid Mata to provide financial education to its members and then received substantial donations from Mata (FAC at ¶ 3); and Mata shared the proceeds of his seminars with Defendant (FAC at ¶ 77).  Even construed in the light most favorable to Plaintiffs, these allegations concern only money given by Defendant to Mata and by Mata to Defendant.  Plaintiffs do not plead that they had an ownership interest in any of the money given by Mata to Defendant.  As such, Plaintiffs fail to plead entitlement to restitution under the UCL.  <u>See</u> <u>Clark</u>, 50 Cal. 4th at 610.  In addition,

as Defendant points out in its Reply, Plaintiff is unable to plead entitlement to injunctive relief because: "[P]laintiffs cannot show that they, or anyone else, face a realistic threat that Mata will conduct financial seminars at Water of Life Church or seek to use those seminars to defraud them.  There is no dispute that Mata's fraudulent ways have ceased."  (Reply at 7.)  The Court takes judicial notice of the judgment, entered against Mata in the related action brought by the Securities and Exchange Commission, S.E.C. v. Mata, No. 15-cv-01792-VAP-KK, Dkt. No. 131 (C.D. Cal. June 17, 2016), which shows Mata's fraudulent scheme has ended and his remains bound by an injunction.  See Fed. R. Evid. 201(b)(2), (c)(1).  In light of the cessation of Mata's fraudulent scheme, injunctive relief does not appear available here.  Accordingly, the Court GRANTS the Motion to Dismiss Plaintiffs' UCL claim.

### 5.      Section 10(b) of the Securities Exchange Act

Defendant moves the Court to dismiss Plaintiffs' Securities Exchange Act claim.  (See Mot. to Dismiss at 13-18.)  In particular, Defendant claims Plaintiffs' allegations fail to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), including the class action pleading requirements set forth in 15 U.S.C. § 78u-4(a)(2)(A).

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  One such rule promulgated under the Act is SEC Rule 10b-5, which provides "[i]t shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(b).

To state a 10b-5 violation, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic

loss."  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009) (citations omitted) (internal quotation marks omitted).  "At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act (PSLRA)]."  Id.

Under Rule 9(b), a plaintiff must plead her fraud claims "with particularity" but may allege "[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally."  Fed. R. Civ. P. 9(b).  These requirements have "long been applied to securities fraud complaints."  Zucco, 552 F.3d at 990.  "Accordingly, before 1995[,] [the Ninth Circuit] required falsity to be pled with particularity, and scienter to be alleged generally."  Id. (citations omitted) (internal quotation marks omitted).

"All securities fraud complaints since 1995, however, are subject to the more exacting pleading requirements of the PSLRA, which significantly altered pleading requirements in securities fraud cases."  Id. (citations omitted) (internal quotation marks omitted).  "The PSLRA amended the Securities Exchange Act to require that a complaint plead with particularity . . . scienter."  Id. (citations omitted) (internal quotation marks omitted).  "To adequately plead scienter, the complaint must now 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  Id. at 991 (citing 15 U.S.C. § 17u-4(b)(2)).  A court reviewing a complaint's scienter allegations "must determine whether '*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'"  Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310 (2007)).  It must also "'take into account [any] plausible opposing inferences.'"  Id. (quoting Tellabs, 551 U.S. at 323).

In Opposition, Plaintiffs argue they state a claim for violation of Section 10(b) of the Securities Exchange Act.  (See Opp'n to Mot. to Dismiss at 23-26.)  Plaintiffs acknowledge, however, the FAC fails to provide allegations required by 15 U.S.C. § 78u-4(a)(2)(A) and ask for leave to amend the FAC to include these required certifications.

As the parties do not dispute the allegations in the FAC are insufficient to state a class action claim pursuant to Section 10(b) of the Securities Exchange Act, the Court need not and will not address Defendant's remaining arguments regarding the purported insufficiency of the allegations.  The Motion to Dismiss the Securities Exchange Act claim is GRANTED.

### 6.    Leave to Amend

When considering whether to grant leave to amend pleadings, "a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities."  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).  Accordingly, leave to amend should be denied only when allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party acted in bad faith.  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).  When dismissing a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Eldridge v. Block, 832 F.2d 1132, 1130 (9th Cir. 1987) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)) (internal quotation marks omitted)).

With respect to Plaintiffs' respondeat-superior negligence claim, for the reasons discussed supra, the Court concludes amendment of this claim would be futile.  That claim, therefore, is dismissed without leave to amend.

Amendment of Plaintiffs' CLRA, UCL, and Securities Exchange Act claims, however, do not appear to be futile.  Accordingly, the Court dismisses those claims with leave to amend.

## III.    MOTION TO STRIKE

The Court next turns to the Motion to Strike the class allegations contained in the FAC.  (See Mot. to Strike.)

21

###### A.      Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

"'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 617 (1994). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." State of Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (9th Cir. 2002). Scandalous matter is that which "improperly casts a derogatory light on someone, most typically on a party to the action." Germaine Music v. Universal Songs of Polygram, 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Alco Pac., Inc., 217 F. Supp. 2d at 1033 (citations omitted). "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief." Id. (quoting Securities & Exchange Comm'n v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)). "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." Id.

In determining whether to grant a motion to strike, a district court views the pleadings in a light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations" in the plaintiff's favor. Alco Pac., Inc., 217 F. Supp. 2d at 1033 (citing In re 2TheMart.com Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). "This is particularly true if the moving party can demonstrate no resulting prejudice." Id. A court should deny "[a] motion to

strike under Rule 12(f) . . . unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation."  <u>Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.</u>, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).

### B.   Discussion

Here, Defendant moves to strike all of Plaintiffs' class allegations on the basis that they are legally insufficient.  (<u>See</u> Mot. to Strike.)  As stated <u>supra</u>, the Court's authority to strike allegations is circumscribed by Rule 12(f), which dictates a court may strike from a pleading only "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); <u>see also</u> <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (district court erred in striking damages claim per Rule 12(f) because "none of the five categories [in Rule 12(f)] covers the allegations in the pleading sought to be stricken . . . . ").

The class allegations in Plaintiffs' FAC are not an insufficient defense nor are they redundant, immaterial, or scandalous.  Defendant does not argue the allegations fall under any of the Rule 12(f) categories; instead, it argues only the class allegations are legally insufficient.  (<u>See</u> Mot. to Strike.)  Accordingly, the Court concludes the Motion to Strike is an improper Rule 12(f) motion and DENIES it.  <u>See</u> <u>Whittlestone, Inc.</u>, 618 F.3d at 973; <u>see also</u> <u>Roy v. Wells Fargo Bank, N.A.</u>, No. 14-cv-04661-SC, 2015 WL 1408919, at *2 (N.D. Cal. Mar. 27, 2015) (concluding Rule 12(f) motion was improper because it sought to strike class allegations as legally insufficient).

Moreover, given the early stage of these proceedings, it is premature to decide whether this case may proceed as a class action before the FAC has been answered, discovery has commenced, or a motion for class certification has been filed.  <u>See</u>, <u>e.g.</u>, <u>Cholakyan v. Mercedes-Benz USA, LLC</u>, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (denying Rule 12(f) motion to strike class allegations as premature); <u>Moreno v. Baca</u>, No. CV 07-149 ABC CWx, 2011 WL 33356835, at *2 (C.D. Cal. Oct. 13, 2000) (same); <u>Shein v. Canon U.S.A., Inc.</u>, No. CV 08-07323 CAS (Ex), 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009) (denying Rule

12(f) motion to strike class allegations because "these matters are more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record").

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss Individual Claims, as follows: the Motion to Dismiss Plaintiffs' direct negligence claim is DENIED; the Motion to Dismiss Plaintiffs' respondeat-superior negligence claim, CLRA claim, UCL claim, and Securities Exchange Act claim is GRANTED.  Plaintiffs' respondeat-superior negligence claims is DISMISSED WITHOUT LEAVE TO AMEND.  Plaintiffs' CLRA, UCL, and Securities Exchange Act claims are DISMISSED WITH LEAVE TO AMEND.   Any amended complaint, amending only those claims identified in this Order, shall be filed no later than September 14, 2017.

The Court DENIES Defendant's Motion to Strike Plaintiffs' Class Action Allegations.

**IT IS SO ORDERED.**

Dated:      8/25/17

_____
Virginia A. Phillips
Chief United States District Judge